UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARCOS CASEY GUILLEN, III,

Plaintiff,

v.

D. CARRILLO,

Defendant.

Case No. 1:19-cv-946-DAD-HBK

FINDINGS AND RECOMMENDATIONS TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

FOURTEEN-DAY OBJECTION PERIOD

(Doc. No. 31)

Pending before the Court is Defendant Carrillo's motion for summary judgment with supporting documents. (Doc. No. 31 through 31-4, MSJ). Plaintiff filed an opposition and a supplemental declaration to the MSJ. (Doc. Nos. 32, 33). For the reasons stated below, the undersigned recommends the district court grant in part and deny in part Defendant Carrillo's MSJ.

**I. BACKGROUND**

Plaintiff Marcos Casey Guillen, III ("Plaintiff" or "Guillen"), a state prisoner, initiated this action in the Superior Court for California by filing a *pro se* complaint on April 3, 2019. (Doc. No. 1 at 4-30). Defendant removed the action to this court under 28 U.S.C. § 28 U.S.C. 1441(b).

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

(*Id.* at 1-2). The Court denied Plaintiff's motion to remand the action back to the state court. (Doc. Nos. 6, 9, 11).

On April 9, 2020, the Court screened the initial Complaint and found Plaintiff's allegation of a strip search and cell sufficiently stated a First Amendment retaliation claim under 42 U.S.C. § 1983 and the Tom Bane Civil Rights Act, California Code § 52.1, against Defendant Carrillo. ((Doc. No. 17 at 1-2).[2] Defendant Carrillo filed his answer and affirmative defenses. (Doc. No. 18). After discovery and in compliance with the scheduling order (Doc. Nos. 19), Defendant timely moved for summary judgment. (Doc. No. 31). In support of his MSJ, Defendant files: a statement of undisputed facts (Doc. No. 31-3), portions of Plaintiff's deposition transcript (Doc. No. 31-4), which was later supplemented with Plaintiff's complete deposition transcript (Doc. Nos. 35, 36), and Defendant Carrillo's sworn declaration (Doc No. 31-5). In summary, Carrillo argues the Court should grant his MSJ because the record contains no genuine dispute of material fact on either Plaintiff's § 1983 claims or the California Bane Act claims. (*See generally* Doc. Nos. 31-2; 31-3; 31-5). Specifically, Carrillo contends the evidence establishes that Plaintiff was placed in a holding cell to calm down and the subsequent search of Plaintiffs' cell was not conducted by Carrillo. Alternatively, Carrillo asserts that he is entitled to qualified immunity. (Doc. No. 31-2 at 8-11). Plaintiff filed an opposition to the MSJ supported by his own sworn declaration and his supplemental sworn declaration. (Doc. Nos. 32, 33).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material where it is (1) relevant to an element of a claim or a defense under the substantive law and (2) would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1987).

The party moving for summary judgment bears the initial burden of proving the absence

---

[2] It appears the screening order was inadvertently docketed twice as both orders appear identical and are two-pages in length. (*See* Doc. Nos. 16, 17). For purposes of these Findings and Recommendation, the undersigned cites to the later docketed screening order. (*See* Doc. No. 17).

of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden, the nonmoving party must go beyond the pleadings and set forth specific facts, by affidavits, deposition testimony, documents, or discovery responses, showing there is a genuine issue that must be resolved by trial. *See* Fed. R. Civ. P. 56(c)(1); *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021). A mere "scintilla of evidence" in support of the nonmoving party's position is insufficient. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Rather, the evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party, to return a verdict in that party's favor. *Id.*

The court must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). It may not weigh evidence or make credibility determinations. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). Conclusory or speculative testimony in affidavits and supporting papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see* Fed. R. Civ. P. 56(c)(2). Furthermore, the Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)). While prisoners are relieved from strict compliance, they still must "identify or submit some competent evidence" to support their claims. *Soto*, 882 F.3d at 872. Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment if based on personal knowledge and specific facts admissible in evidence. *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). However, a complaint's conclusory allegations, unsupported by specifics facts, will not be sufficient to avoid summary judgment. *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001). And, where a plaintiff fails to properly challenge the facts asserted by the defendant, the plaintiff may be deemed to have admitted the validity of those facts. *See* Fed. R. Civ. P. 56(e)(2).

The undersigned has carefully reviewed and considered all arguments, points and

authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. The omission to an argument, document, paper, or objection is not to be construed that the undersigned did not consider the argument, document, paper, or objection. Instead, the undersigned thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate for purposes of issuing this Findings and Recommendations on Defendant's MSJ.

## III. ANALYSIS

### A. Allegations in Complaint

The events giving rise to the cause of action occurred on August 29, 2018, at 2:25 p.m., when Plaintiff requested to go to the law library while he was in the prison yard at California State Prison, known as B-yard. (Doc. No. 1 at 6). Plaintiff was "waived" over by Defendant Carrillo to be searched before he could go the law library. Defendant Carrillo told Plaintiff it was "irritating for the Plaintiff to ask if the law library (on B-yard) was open." (*Id.*). After Defendant completed his search, Plaintiff "turned around to face [the] officer" and remarked, "there is nothing wrong to ask about the law" and "also that the plaintiff had a court deadline." (*Id*. at 7). Again, Defendant Carrillo stated, "there was something wrong to ask if the law library was open." (*Id*.). Plaintiff then proceeded to take out a pen and a piece of paper stating his intent to file a "602 administrative appeal complaint." (*Id*.). Immediately thereafter, Carrillo asked Plaintiff to turn around, he cuffed Plaintiff up, and took Plaintiff to a cell where he performed a strip search, forcing Plaintiff to strip naked and squat. (*Id*.).

After being released from the holding cell at 3:45 p.m., Plaintiff returned to his cell and found his locker was empty of his clothes, and his personal items and legal papers strewn over the floor. (*Id.*). Plaintiff's cellmate's personal items "were untouched." (*Id*.).

### B. Undisputed Facts and Law

As previously stated, the undersigned considers the entire record and deems only those facts true which are properly supported by evidence. The undersigned finds the following material facts to be either undisputed, or, following the undersigned's review of the evidence submitted, are deemed undisputed, unless otherwise indicated. Plaintiff pursued this action

against one defendant: Defendant Carrillo.

- The incidents giving rise to the cause of action occurred on August 29, 2018, while Plaintiff was in the prison yard at California Correctional Institution. (Doc. Nos. 31-4 at 38; 32 at 2 ¶ ¶1-2; 31-5 a 1 ¶2).
- Defendant Carrillo was assigned to work in the yard. (Doc. Nos. 31-5 at 1 ¶2; 32 at 2 ¶¶1-2).
- Over a hundred inmates were present in the yard at the time of the incident. (Doc. Nos. 31-5 at 1 ¶2; 32 at 2 ¶¶5-6) (the total number of inmates varies from 130 as reported by Plaintiff Guillen to 200 to 300 as reported by Carrillo).
- Inmates are permitted to go to the law library during yard time. Standard practice is to wait for all inmates to come to the yard before permitting inmates to go to the law library. Once all inmates are in the yard, staff then call for inmates who wish to go to the law library. (Doc. 31-
- Before all the inmates were in the yard, Plaintiff approached Defendant Carrillo to ask him if he could go to the prison law library and Carrillo told him to wait until all the inmates were on the yard. (Doc. Nos. 31-4 at 32:12-13; 31-5 at 2 ¶32 at 2 ¶¶4-5).
- Approximately thirty minutes later, Plaintiff went to Carrillo a second time to ask to go to the prison law library, but again Carrillo told him to wait. (Doc. Nos. 31-4 at 32-33:18-20, 5-9; 31-5 at 2 ¶5; 32 at 2 ¶7).
- A short time later, an announcement was made that the law library was opened, so Plaintiff proceeded to line up behind a yellow line with other inmates requesting the law library. (Doc. Nos. 31-4 at 38:13-34; 31-5 at 2 ¶¶6; 32 at 2 ¶¶8-12).
- Carrillo specifically selected Plaintiff for a pat-down search and at some point, Plaintiff turned around and pulled out a pen and paper. (Doc. Nos. 31-4 at 40:10-22; 31-5 at 2 ¶7; 32 at 2 ¶¶18-19).
- Carrillo thought Plaintiff appeared anxious or agitated. (Doc. No. 31-5 at 2 ¶7).
- Plaintiff denied he was agitated but acknowledges he was anxious. (Doc. No. 31-4

at 42:16-17).

- Carrillo then handcuffed Plaintiff and brought him inside to a holding cell and conducted a strip search and no contraband was found. (Doc. Nos. 31-4 at 47:12-25; 31-5 at 2 ¶8; 32 at 3 ¶¶17-18).
- Following the strip search, the parties do not dispute Plaintiff's cell was subject to a search but both acknowledge that Defendant Carrillo did not participate in the cell search. (Doc. Nos. 31-5 at 3 ¶¶10-11; 31-4 at 54; 32 at 7). Plaintiff acknowledges in his sworn declaration that his cell was searched and trashed by Officer Deleo and Peña. (Doc. No. 32 at 7).

**C. Disputed Material Facts**

The following facts surrounding whether Plaintiff cooperated with the pat-down search and the reason Carrillo brought Plaintiff inside to conduct the strip search are disputed.

- Per Carrillo: Plaintiff appeared to want to avoid the pat down search, was agitated and anxious. (Doc. No. 31-5 at 2 ¶7). Based on Plaintiff's demeanor, Carrillo believed Plaintiff was hiding contraband. (Doc. No. 31-5 at 2 ¶7-8). Carrillo claims Plaintiff turned around during the pat-down search. Based upon standard practice, when an inmate subject to a pat down search becomes agitated, confrontational, argumentative, or engages in potentially threatening behavior, it is standard practice to place the inmate in handcuffs and place them in a holding cell to calm down, followed by a strip search. (*Id.*). Carrillo states this is because inmates who behave this way often do so when carrying contraband. (*Id.* at 2 ¶8). Further, because there are at least one-hundred inmates on the yard at one time and only four or five correctional guards, Carrillo believed it was necessary to remove Plaintiff from the yard to a holding cell "to de-escalate the situation before a potential physical confrontation occurs." (*Id.* at 1-2, ¶¶2, 7-8). Thus, Carrillo escorted Plaintiff out of the yard to a holding cell and conducted an unclothed body search to preserve institutional order and security. (*Id.* at 3 ¶9).

- Per Plaintiff: he cooperated with the pat down search on the yard. (Doc. No. 31-4 at 40:20-22). Plaintiff acknowledges he was anxious, but explains his anxious demeanor was because he wanted to go to the law library because he had a deadline in another case. (*Id.* at 42:16-17). Plaintiff alleges Carrillo specifically called him over for a pat-down search despite there being five other inmates waiting in line to go to the law library and was confrontational during the search. (*Id.* at 42:10-13; Doc. No. 32 at 7). In his deposition, Plaintiff states that he did not turn around until after Carrillo completed the pat-down search. Plaintiff also claims that during pat-down search Carrillo initiated the discussion about the law library. Also in his deposition, Plaintiff states he was cuffed up immediately after he informed Carrillo that he was writing a 602-inmate appeal on him. This is consistent with the Complaint, wherein Plaintiff alleged Carrillo strip searched him in retaliation for taking down Carrillo's name and telling him he was going to file an inmate grievance on him and because he wanted to go to the law library because he was under a deadline. (Doc. No. 1 at 7). In his declaration, Plaintiff claims in response to Plaintiff's interrogatories Carrillo admitted that "Plaintiff's statement that he was going to submit an inmate appeal (602 complaint) was made prior to [him] being placed in handcuffs" (Doc. No. 21 at 7) (citing Defendant's response to interrogatories, set two, no. 6)[3]; *see also* (Doc, Nos. 32 at 7; 33 at 1).

**D. First Amendment Retaliation**

To prevail on a claim of retaliation under the First Amendment, a plaintiff must show five requisite elements: (1) he or she engaged in a protected conduct; (2) defendant took adverse action against the plaintiff; (3) a causal connection between the adverse action and the protected conduct; (4) the official's acts would chill a person of ordinary firmness from future exercise of First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *see also Rhodes v. Robinson*,

[3] Plaintiff, however, does not attach a copy of Carrillo's answer to the cited interrogatory.

408 F.3d 559, 567-68 (9th Cir. 2005).

Filing an inmate grievance is protected conduct. *Rhodes*, 480 F.3d at 568. Threatening to file an inmate grievance has also been deemed protected conduct under the First Amendment. *See Gleason v. Placensia*, Case No. 1:19-cv-539-LJO-EPG, 2020 WL 3497001, at *3 (E.D. Cal. 2020) (citations omitted) (noting courts have deemed asking to obtain grievances or threatening to file grievances within the purview of protected First Amendment activity). Regarding the second element, adverse action taken against the prisoner "need not be an independent constitutional violation. The mere threat of harm can be an adverse action." *Watison*, 668 F.3d at 1114 (internal citations omitted). The causal connection between the adverse action and the protected conduct can be inferred from an allegation of a chronology of events. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). But, depending on the facts presented, mere timing of events may not be sufficient to establish causation. (*Id.*).

**1. Incidents on the Yard**

On the day of the incident, Carrillo attests under oath that the recreation yard had 200-300 inmates and only a handful of correctional officials. (Doc. Nos. 31-2 at 2-3). Plaintiff does not present any facts to dispute the number of inmates on the yard and the limited number of correctional officials but in his deposition estimated that the yard had at least 130 inmates. Both parties acknowledge that there were only between six and eight guards in the yard at this time. Carrillo explains that Plaintiff's anxious demeanor caused his suspicion to arise that Plaintiff may be hiding contraband. Carrillo further attests and Plaintiff does not dispute, that an agitated inmate on the yard is a security concern considering the number of inmates on the yard and the limited number of correctional officials. While Plaintiff acknowledges he had an "anxious" demeanor on the yard on the day of the incident, he explains he was anxious to get to the law library because he had a deadline in his other case and was having difficulties being able to get to the law library. Plaintiff also claims Carrillo was confrontational and sets forth a sequence of events: he twice asked Carrillo about when it would be time to go to the law library, when he lined up after a call was made to go to the law library, Carrillo signaled him out for a pat-down search, during the search Carrillo made comments about Plaintiff asking to go to the law library,

after Plaintiff fully complied with the pat-down search and turned around and took out his paper and pen and advised Carrillo that he was going to file an 602 inmate appeal on him, Carrillo cuffed him up and escorted inside to a cage and conducted a further strip search on him, making him strip and squat and Plaintiff was unable to go to the law library.

It is unequivocable that both Plaintiff's actions in filing an inmate grievance or a request for access to the law library in reference to a civil rights complaint filed against another correctional officer are both protected activities under the First Amendment. *See Rhodes*, 408 F.3d at 567 (right to file prison grievances and civil rights complaints). Nor does Defendant Carrillo dispute that Plaintiff was engaged in protected conduct. (Doc. No. 31-2).

Defendant disputes that any adverse action was taken because Carrillo asked to go to the law library or threatened to file a 602-inmate grievance and instead argues the cuffing of Plaintiff and subsequent strip search was in furtherance of legitimate institutional goals because he believed by Plaintiff's demeanor that Plaintiff was hiding contraband. Plaintiff points to the above sequencing of events and notes that Carrillo took the action immediately after they exchanged words during the pat-down search about going to the law library and right after Plaintiff took out a piece of paper to write down Carrillo's name to file a 602-grievance appeal.

Preserving institutional order and security are clearly legitimate penological interests that, if in fact were the motivation behind Carrillo's actions, will defeat a retaliation claim. *See Barnett v. Centoni*, 31 F. 3d 813, 815 (9th Cir, 1994); *Bruce v. Ylst*, 351 F.3d 1283-89-90 (9th Cir. 2003). The record, however, contains a genuine dispute of material fact that the action Carrillo took, specifically identifying Plaintiff for a pat-down search in the yard prior to law library access and his subsequent cuffing and strip search in a holding cell, was done for legitimate correctional goals, or was done in retaliation. The intent behind Carrillo's actions that day is a credibility determination and one the Court cannot make. *See Trap v. United States*, Case No. 13-00003-DMG, 2017 WL 8793328, at *27 (C.D. Cal. Oct. 13, 2017) (reviewing retaliation claim, among others, determining issue remaining was credibility determination for the jury).

There are other uncontroverted facts and factual discrepancies upon which a reasonable

jury could infer that Defendant Carrillo had a retaliatory motive when he escorted Plaintiff and conducted a strip search of Plaintiff. Both parties acknowledge that Plaintiff lined-up with other inmates who wanted to go to the law library. Plaintiff does not dispute correctional officers conduct random pat down searches before inmates leave the yard to attend the law library. However, nothing in the current record suggests that *all* inmates were subject to a pat down search before going from the yard to the law library. Instead, out of those inmates in line for the law library, only certain inmates were selected for a pat down search. And not only was Plaintiff selected for the pat down search—it was Carrillo who chose him out of the line-up for the pat down search. Thus, the timing of events discussed above raise a question as to the intent leading to Carrillo's actions in cuffing Plaintiff and escorting him for a strip search. *See Pratt*, 65 F.3d at 808 (recognizing that timing can be circumstantial evidence of intent).

For the reasons stated above, the undersigned find that while Carrillo may have been justified in cuffing up Plaintiff and conducting the strip search, Plaintiff has presented sufficient evidence from which a reasonable jury could conclude that Carrillo's actions was a pretext for retaliation, *i.e.*, subjecting Plaintiff to being cuffed, strip searched and prohibiting him from accessing the law library, because Plaintiff continued to ask him to go to the law library in connection with a pending civil rights action against another correctional officials and/or because Plaintiff told him he was filing a 602-inmate appeal.

The record also contains a question of fact on the chilling effect of a strip search. Both pat down searches and strip searches occur in prisons, usually for purposes of maintaining the security and safety of correctional staff and inmates alike. *Bell v. Wolfish*, 441 U.S. 520, 540 (1979) (upholding strip searches of pretrial detainees because correctional officials have an obligation to maintain jail security and restraints that are reasonably related to maintain jail security, without more, is not unconstitutional); *see also Bull v. City and County of San Francisco*, 595 F.3d 964, 976 (9th Cir. 2010) (affirming strip search policy that did not require individualized reasonable suspicion before searching at San Francisco County Jail under the Fourth Amendment due to importance of maintaining security and preventing contraband smuggling and limited to visual inspection). Plaintiff acknowledges during his incarceration he

has been subjected to strip searches in the past, sometimes once a year. (Doc. No. 36 at 51-52).

The First Amendment inquiry asks, "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." It is unclear on this record whether Carrillo's response to Plaintiff in fact chilled his speech. *Rhodes*, 408 F.3d at 568-69 (citing *Mendocino Environmental Cty v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)). "[A] plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.'" *Mendocino Environmental Cty*, 192 F.3d at 1300. The question presented is whether it is demonstrated that defendant "*intended* to interfere" with a plaintiff's free speech. (*Id.*) (emphasis in original).

Here, Plaintiff appears to have proceeded in filing inmate grievances and ultimately initiated the instant lawsuit against Carrillo in state court. (Doc. No. 1 at 4-8). This presents the proverbial Catch-22 discussed in *Rhodes* regarding inmates who file a complaint on the retaliation who then cannot then prove the retaliation claim.

Because the undersigned finds a dispute of material fact on the other elements, likewise the undersigned finds a dispute of material fact as to whether a strip search would chill or silence a person of ordinary firmness from future First Amendment activities. *See McMillan v. Ringler*, No. 213CV0578MCEKJNP, 2018 WL 497374, at *8 (E.D. Cal. Jan. 22, 2018), *report and recommendation adopted*, No. 213CV0578MCEKJNP, 2018 WL 888469 (E.D. Cal. Feb. 14, 2018) (because a dispute of fact remained on whether search for cell phones a pretext for retaliation court declined to find the searches would not silence a person of ordinary firmness from future First Amendment activities). Therefore, because the issues revolve around credibility determinations which are better suited for a jury, the undersigned recommends the Court deny Defendant's motion for summary judgment on the First Amendment retaliation claim related to the strip search.

**2. Cell Search and Trashing of Plaintiff's Cell**

Plaintiff also alleged retaliation in connection with the search and trashing of his cell that occurred the same day. The Constitution permits random searches of cells and in fact cell

searches have been commented to be "the most effective weapon of the prison administrator in the constant fight against the proliferation of knives and guns, illicit drugs, and other contraband." *Hudson v. Palmer*, 468 U.S. 517, (1984). Here, unlike *Hudson*, Plaintiff contends his cell was targeted and trashed, so the search was akin to harassment.

Title 42 U.S.C. § 1983 provides "every person who, under color of any statute of any state. . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .." *Id.* "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he [or she] does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In other words, liability arises under § 1983 when the official personally participates in the alleged violation or sets into motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional injury. *Id.*

The undisputed facts of record, however, show Carrillo was not involved in the search of Plaintiff's cell. (Doc. Nos. 31-2 at 7; 31-5 at 3 ¶¶10-11; 31-4 at 54). Plaintiff admits that his cell was "trashed by Officers Peña and Deleo." (Doc. No. 32 at 4). Plaintiff claims in his opposition that Carrillo admitted he spoke with Sergeant Gentry about the yard incident, and he states that Gentry then directed the two Officers to trash the cell. (Doc. No. 32 at 1). While Carrillo admits he spoke to Gentry, he states it was only to advise Gentry that he had placed Plaintiff into the holding cell, after which Gentry told him he would speak with Plaintiff and release him back to his housing unit. (Doc. No. 31-5 at 3, ¶ 10). During his deposition, Plaintiff testified that "he did not know why" Carrillo would tell Gentry to search his cell, but surmised it was because he was angry. (Doc. No. 31-4 at 54). At most, Plaintiff speculates that Carrillo told Gentry, who then allegedly told Officers Peña and Deleo, to trash Plaintiff's cell. Plaintiff provides no evidence to support this speculation or dispute Carrillo's evidence that he had nothing to do with either searching of the cell or directing anyone else to search the cell. (*See supra* at 4) (noting that a

non-moving party must go beyond the pleadings and set forth specific facts, by affidavits, deposition testimony, documents, or discovery responses, showing there is a genuine issue that must be resolved by trial). Thus, the undersigned recommends Defendant Carrillo's MSJ be granted as to the First Amendment retaliation claim stemming from the search and trashing of Plaintiff's cell.

**E. Qualified Immunity to claims under § 1983**

In the alternative, Defendant Carrillo asserts the defense of qualified immunity. (Doc. No. 31-2 at 8-10). Qualified immunity shields government officials from money damages unless their conduct violated "clearly established statutory or constitutional rights." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *accord Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018). To overcome the heavy burden of qualified immunity, Plaintiff must show that "(1) the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent," as shown in "controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*. at 590. The legal standard at issue must also have a high "degree of specificity." *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015). Courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590. A legal principle is too broad if the unlawfulness of an official's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987)).

Here, taking the facts in the light most favorable to Plaintiff, he has stated a claim for the violation of his First Amendment right to be free from retaliation for engaging in protected activity—the threat of filing a prison grievance. *See Watison*, 668 F.3d at 1114. Second, the law

at the time of the challenged conduct clearly established that retaliation in response to the threat of filing prison grievances was unlawful. *See Pratt*, 65 F.3d at 806 & n.4 (stating "[t]he prohibition against retaliatory punishment [for filing prison grievances] is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes."). "The most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts, for '[w]ithout those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.'" *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) (quoting *Rhodes*, 408 F.3d at 567) ("[I]t was, of course, clearly established when [plaintiff] filed his grievances . . . that he had the 'constitutional right' to do that.").

Defendant Carrillo argues he did not violate Plaintiff's rights and acted reasonably, so he is entitled to qualified immunity. (Doc. No. 31-2 at 9). Carrillo also argues that based on the facts presented, it would not have been clear to a reasonable official that his actions were unlawful under the circumstances when faced with an inmate who "became anxious, repeatedly asking to go to the law library in spite of being told he needed to wait until all inmates had arrived on the yard." (*Id.*).

As discussed above, triable issues of fact exist as to whether Carrillo strip searched Plaintiff in retaliation for his request to use to the law library and/or threatening to file a prison grievance, or for a legitimate correctional goal after Carrillo observed Plaintiff's behavior on the yard. In the event Defendant's motive was to retaliate when he conducted a strip search of Plaintiff, the right to be free from such retaliation is clearly established law. Accordingly, Defendant is not entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

**F. Pendent State Law Claim**

The federal court has pendent jurisdiction over a state claim where there is a claim arising under the U.S. Constitutions or laws of the United States, and there is a relationship between that federal claim and the state claim. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). Here, this Court has pendent jurisdiction over the Bane Act claim because the action removed to this Court set forth a claim under 42 U.S.C. § 1983 for retaliation under the First

Amendment.

The Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1 civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out "by threats, intimidation or coercion." *Reese v. County of Sacramento*, 888 F.3d 1030, 1040-41 (9th Cir. 2018). To state a claim under the Bane Act, a plaintiff must allege "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." *Lull v. Cty. of Sacramento*, No. 217CV1211TLNEFBPS, 2019 WL 1014592, at *7 (E.D. Cal. Mar. 4, 2019), *report and recommendation adopted*, No. 217CV01211TLNEFB, 2019 WL 1429577 (E.D. Cal. Mar. 29, 2019) (citations omitted). Qualified immunity is not available for claims brought under section 52.1. *Reese*, 88 F.3d at 1041.

The Bane Act proscribes conduct by any person, "whether or not acting under color of law," who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state...." Cal. Civ. Code § 52.1(a). The Bane Act permits the government, or an individual, to bring a civil action for damages, injunctive relief, or equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured. *Id.*

"To obtain relief under Civil Code section 52.1, a plaintiff need not allege the defendant acted with discriminatory animus or intent; a defendant is liable if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 502 (2006) (citing *Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 841-43 (2004)). Section 52.1 "require[s] an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998) (citations omitted). "The essence of a Bane Act claim is that the defendant, by the specified improper means (*e.g.*, threats, intimidation or coercion), tried to or did prevent a plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Shoyoye v.*

*Cnty. of Los Angeles*, 203 Cal. App. 4th 947, 956 (2012) (citations and internal quotation marks omitted). "Technically, whether a constitutional violation occurred and whether that violation was accompanied by any threats, intimidation or coercion are separate analytical inquiries (albeit with intertwining facts)." *Barsamian v. City of Kingsburg*, 597 F. Supp. 2d 1054, 1057 (E.D. Cal. 2009).

Defendant Carrillo argues that because his actions were done for legitimate penological purposes there is no evidence that he attempted to "interfere by threats, intimidation, or coercion with the exercise by Guillen of his rights." (Doc. No. 31-2 at 8). Because the undersigned has found a genuine dispute of material fact exists as to the intent behind Carrillo's actions and whether he strip searched Plaintiff in retaliation for threatening to file an inmate grievance, the undersigned must likewise find a genuine dispute of material fact exists on Plaintiff's Bane Act claim as to the strip search claim. The same facts supporting Plaintiff's First Amendment retaliation claim support a Bane Act claim. *See McMillian*, 2018 WL 497374, at *18 (finding when facts supporting First Amendment retaliation claim are disputed, similar dispute remains on Bane Act claims).

Accordingly, it is **RECOMMENDED**:

Defendant's motion for summary judgment (Doc. No. 31) be GRANTED in part and DENIED in part. The motion be GRANTED with respect to Plaintiff's First Amendment retaliation claim and Bane Act claim involving the search and trashing of Plaintiff's cell but DENIED with respect to Plaintiff's First Amendment retaliation claim and Bane Act claim involving Plaintiff's strip search claim.

NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these findings and recommendations, a party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834,

838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated: March 28, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE